Good morning and aloha your honors. I am attorney Gordon Yang here with attorney Ronald T. Oldenburg representing petitioner Manuel Calderon Ancheta Sr. who is present in the court today. This is a due process immigration case. The immigration judge found Mr. Ancheta removable after finding that he had committed two crimes involving moral turpitude. However, Mr. Ancheta asserts that he is not convicted of two crimes involving moral turpitude and asks that this court reverse the IJ's determination. However, if the court does determine that two crimes involving moral turpitude exist, then we ask that the court reverse and remand as the IJ applies the incorrect standard in denying cancellation of removal, as well as committing numerous other procedural errors which deprived Mr. Ancheta of a fundamentally fair hearing. First, on the issue regarding the theft in the third degree, the 1998 conviction. This is not a crime involving moral turpitude under Hawaii law and it is proper that the court reverse the immigration judge's decision. Why not? I'm under the impression, correct me where I'm wrong, that theft is a crime of moral turpitude. Why is this theft or not? Categorically, the court must first look at the language of the statute under which Mr. Ancheta was convicted. He was convicted of theft in the third degree and when you look at the appropriate section of the Hawaii Revised Statute, there is no intent to defraud required as an element. The intent to deprive somebody else of their property is inherent in theft. What was stolen here? Services of a golf course were the item at issue. So he paid a bad check in order to participate in a tournament to the golf club? Is that right? Well, to step back, Your Honor, that information, I must note, is not contained within the indictment, the plea, the judgment, or sentence. So how are you convicted of fraud if you haven't, or rather of theft, if you haven't stolen something from somebody else? That's a good question, Your Honor. What's the answer? When you take a look at the statute, it would appear that under Hawaii law, it is possible to plead no contest to theft in the third degree when you intentionally obtain something from another by other means. Part of the statute says by deception or by false token, but it is possible to obtain something by other means. How? How then? It's a theft. That's taking something wrongfully from somebody else. I just don't follow your argument that theft is not theft. This is not a common law theft, Your Honor. One interesting aspect of the Hawaii statute is that there is a separate section regarding defenses to theft. And in that section, it says if you have a right to the item or the service. That's standard in all states. You can't steal something you have a right to. Then it's not theft. It may be a civil dispute. I mean, I just don't understand how theft cannot be theft. By a strict interpretation of the Hawaii Revised Statute. Is there a case that says this? I have not been able to find a case on this. Let me ask you this way. I understand that we're talking about categorical, but I want to use what apparently happened here as an example as to whether or not it's included within the statute. If somebody bounces a check, is that theft within the meaning of the statute? Let's say I give you a check for a hundred bucks for something. It could be. Yes, it could be. And is it a violation of the statute? Even if I thereafter make up the difference that is to say, you know, people bounce checks all the time. Sometimes they know they have no funds. Sometimes they think they have funds and they're wrong. Yes. If I bounce a check and I think I have funds, but I'm wrong, is that theft under the statute? Technically, we assert that it could be a theft. And do you have any case law that says that in Hawaii? No, there is no case law in Hawaii on this point. Because it can't be. Well, if you don't have any criminal mens rea and you write a check thinking you have enough money in your account or not knowing that's not a crime anywhere. Well, what happens? But I guess we have no case law. But what happens if you think at the time you write the check, you think you have funds or maybe you're just careless, you're not sure it bounces. Then they come back to you for payment. And you say, you know, go whistle. I'm not paying you. That's what we have been at that point. You have some some bad intent, whether it's sufficient for more perpetuity. I'm not sure that is our argument and that it is possible by other means to refuse payment of service. And perhaps that justification for refusing payment for service may or may not stand before a jury or a judge. And so a defendant may choose to plead to a lower charge, pleading no contest, not to speak the facts and still obtain a conviction of theft. We would also like to point out that there is a difference to be clear. We have no Hawaii case law that tells us. I mean, we're just making this all up. Right. Yes, Your Honor. There is no case law interpreting whether theft in the third degree requires this evaluation that theft is theft, that there's this necessity. Well, you know, they're usually jury instructions that go along with charges like this. Have you looked at the jury instructions that would accompany a charge like this? There were no jury instructions in this. I know. But have you looked at them? I mean, they usually exist and they almost always require a criminal mens rea. We have not looked at the jury instructions in this case. I.J., in her opinion, says that the mens rea for that third degree theft is intent, is intentional. Yes. And so that would mean that he knew that he didn't have offense. Not necessarily. When you look at the statute, 708 830, there are eight ways that you may commit theft. Some of the ways require intent to defraud. Some of them require an intent to deprive. But deprived is not the same as defraud. And the section that we have quoted subsection four, it states a person intentionally. Have you ever looked at the jury instructions for these things? We did not evaluate the jury instruction. Sorry. You can have a hard time convicting somebody of theft if they didn't have a criminal mens rea with the intent to take something that belonged to somebody else. I've never heard of such a thing. Didn't he in any event, I mean, didn't Mr. Encheta concede before the I.J. that that conviction was for a crime of moral turpitude? No, Your Honor, he did not. What he did. At one point he did. But what he did is he conceded that they were not two crimes in a single scheme of criminal misconduct. And in fact, in his opening brief to the immigration judge, he contested that it was a crime involving moral turpitude. Also on appeal to the BIA, he contested that it was a crime involving moral turpitude. So he has preserved that issue for appeal. We note also that this court may disregard any concession in light of the Montero Martinez case in which the court did such a waiver. This is the judge before Judge Dana Diaz. Is there more than one immigration judge? No, Your Honor. This is the one judge that does all these cases. Yes, Your Honor. Your Honor, if I may, I have one minute left. I'd like to move on to one of our stronger arguments. If you could argue standard applied by the judge in terms of grinding relief for removal. Yes. This judge applied for cancellation of removal under subsection A of 8 U.S.C. 1229 D. He only needed to show that he was a lawful permanent resident for five years, that he had continuously resided in the U.S. for seven years, and that he was not an aggravated felon. And he showed all those three and the I.J. so indicated. Yes, Your Honor. Now, under subsection B for cancellation of removal of non-permanent residents, it has an element of proving exceptional and extremely unusual hardship. And the grob amount of what that is, is that it is something different, something distinguishable. You know, I think you're strong. To cut to the chase, I think your stronger argument is not that the judge confused subsections A and subsection B, but rather the judge confused the standard with the old standard under 212 C and simply ignored the operative language in Sotelo Sotelo. This is Sotelo Sotelo says that you cannot use when you're when you're when you're applying a standard, the unusual or outstanding equities. That's not the appropriate standard. And this is clearly a Sotelo Sotelo case. And she recites as part of the boilerplate, which in some cases may have to involve unusual or outstanding equities. And then at the end of her order, she says, court, it would. There's no hardship of the family that is so severe that it would distinguish this family from the many others who find themselves. In other words, she's trying to find unusual circumstances. Some point. That's her argument is really based solely on Sotelo Sotelo. That's the gist of our argument, Your Honor. Yes. How do we know that she's just that the IJ is not just balancing factors in the exercise of discretion at that point after citing Sotelo Sotelo? Well, really, though, it is not merely a balancing because she's she's examining hardship, but she's taking it to a much higher level by attempting to distinguish distinguish it. According to a matter of CBT, you don't need to show exceptional, extremely unusual hardship. She cited that. She cited that, too. That's correct. But she did not apply it correctly. She only needed to show that as a matter of discretion, there was a proper positive outweigh the negative and hardship, not extreme hardship, not exceptional and extremely unusual hardship needed to be demonstrated. And in effect, what the IJ has done is cloak her decision with this protection that since it's a discretionary determination, she could apply any type of standard and say my decision should stand. She could, in effect, say she's not going to grant cancellation of removal for an unconstitutionally protected basis. Maybe she wants to discriminate against protected category. The court wouldn't, I would hope, protect her decision there. It shouldn't protect the decision here where she's applying the incorrect legal concept. What if the IJ simply had said I'm exercising my discretion here based on race and nationality? Would we have jurisdiction to examine that given that we have no jurisdiction to examine discretion one way or another? I don't think that's. Yes, I think the court should take jurisdiction. But how? How would we have jurisdiction when we were told we do not? After the passage of the Real ID, Congress made clear that the court should take jurisdiction over constitutional and legal claims as the doctrine was already developed in this court in cases like Montero Martinez. And as a matter of pure justice, it really goes to the foundation of our nation. But if we have this constitution, if we have these rights that we hold so dear and important, they should not be cloaked and protected by this doctrine. It sounds like a very good argument to make to Congress. I'll concede that. I think your argument is there's a legal standard. If she's misapplied the legal standard, we send it back to her for her to do her discretion under the proper legal standard. We have no we have no ability when she's at the proper legal standard to rejudge whatever she's done. I mean, we have no jurisdiction. That's correct. We're not asking the court to weigh the positive and negative factors. We're just here asking the court to guide the immigration judge in applying the standard by remanding. So here's the standard. Yes. On this issue, we would ask for. I think you're well over your time. Thank you. Morning, please. The court, James Cross, the attorney general. Now that I'd like to note that Petitioner Encheta only raised two issues to the board in his brief to the board. And those dealt with whether or not he was removable as charged and whether or not he was entitled to a discretionary grant in place with removal. Because those are the only issues you presented the board and because of the exhaustion requirement, those are the only two issues that are properly before the court. As to removability, there were a number of questions about whether or not intent is required. State v. Mitchell, which is cited in our brief at page 12, indicates that under Hawaii law, intent to deprive is a material element of second and third degree theft. And in fact, if you look at the charging documents at pages 380 and 387, he was charged with acting with intent. And of course, theft is a crime involving moral turpitude. So he's removable as he conceded at page 141 for commission of two crimes involving moral turpitude. And that's really all that matters on the issue of removability. In the context of this case, and given his failure to exhaust most of the issues he's raised, I'm not sure whether it matters that the criminal jurisdictional bar would apply at 1252A2C. But to the extent it does matter, it would apply in the context of this case, if the alien had been convicted of two crimes involving moral turpitude, which he has, and if the offenses of which he's been convicted are ones for which he could have received a sentence of one year or longer. Yes, Your Honor? I'll wait, because I think you're in the middle of saying something. His first offense is a felony. He could have received five years for that, so there's no question that that applies. His second offense was a misdemeanor, and the maximum punishment for that is one year. Mathematically, one year is one year or longer, although just barely, so the criminal jurisdictional bar would apply. And the discretionary review bar would apply as well at 1252A2BI. So under that provision in this court's decision in Montero-Martinez, the court would not have jurisdiction to review the discretionary denial of his cancellation or removal application. If the IG is applying the wrong legal standard, do we have jurisdiction to say, here is the correct legal standard and remand for decision under the correct legal standard? If the alien exhausts the issue, yes. I think that would be a question of statutory interpretation, which under the Real ID Act, the court would have jurisdiction to review, but he didn't exhaust the issue. And certainly, the board would have jurisdiction to address due process claims such as the type that he's raised. That's what this court has said in the launch of the body. He said it again in Sanchez-Cruz, which are two cases we cite in our Rule 28J letter. Let me ask you this. I assume this assumes exhaustion. I'm on page five of the IJ's order. It's 120 of the AR. The IJ is just reciting the applicable law. A page earlier, the IJ has cited a matter of Sotelo, but I'm now toward the bottom of page five of the IJ's order. We're about starting, I guess, six lines up. However, as negative factors grow more serious, it becomes incumbent upon the alien to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities. Is that an accurate statement of the law? I believe so, Your Honor. In a matter of CBT, the board adopted what was a matter of Edwards standard for 212C for cases involving lawful permanent residents who are applying for cancellation or removal in the exercise of discretion. How is that statement consistent with Sotelo-Sotelo? I'm trying to remember exactly how Sotelo-Sotelo modified CBT. I'll just read to you from Sotelo-Sotelo. It says, to the extent that the IJ is referenced to a requirement of, quote, unusual or outstanding equities, close quote, may have suggested a separate test. We clarify that no separate threshold standard exists. Well, perhaps I could rely on this fact, Your Honor. If you look at the record at page 235 to 237, petitioner asked the immigration judge to rely on CBT and argue to the board at page 93 and to the immigration judge at the same place that the immigration judge had to consider the hardship to his family. Well, I understand that, but I'm asking you a different question. I'm asking you whether this statement of unusual or outstanding equities are required in certain circumstances is consistent with the statement in Sotelo-Sotelo that they're not. Well, it's my understanding that the outstanding equities or the equities issue would be the worse your criminal history is. Necessarily, you need to show more positive equities. It's just a balancing. Well, I understand that. And that's why I think what the immigration judge was doing here, saying, well, look, you've got... You know, you're sliding off my question because I think you don't want it. I'm saying, the IJ is saying, which in some cases may have to involve unusual or outstanding equities. As I read Sotelo-Sotelo, it says that is no longer the test because after the amendment of the statute, we now have already built into it, because it's aggravated felonies, we just take it out of the test. We do balancing. There's no question about that. But the test is no longer and cannot any longer involve unusual or outstanding equities as a criterion. Is that an inaccurate reading of Sotelo-Sotelo? I can't answer that, Your Honor, because I was looking at a matter of CBT, which is what... Why can't you answer that? Because I can't remember exactly. I mean, if you're saying that's what it says, then that's what the law is. I was looking at a matter of CBT because that's what he asked the immigration judge to apply. In fact, and that's what he told the board the immigration judge had to apply. But the immigration judge even cites the case of Sotelo. Yes, and I understand that, Your Honor. And if you read 119 to 121, the immigration judge is basically laying out the exact standard that's in a matter of CBT that he asked the immigration judge to rely on. So to the extent that... But the controlling case under the BIA is Sotelo. Yes, and I understand that. So my point would be, Your Honor, that if that's the case and has modified CBT in that manner, then he's not in a position, I guess under the invited error doctrine, to say the immigration judge... I don't think the invited error doctrine applies when we're doing a review of the legal question. I think that's sort of de novo. You don't invite error on the law. Well, then I guess... That applies to trials and evidentiary proceedings. So I guess then we'd come back to exhaustion then. Are you conceding that she applied the wrong standard? I was under the impression the standard was a matter of CBT, and she laid out the standard. But it's not. CBT. Well, then I guess... But it was you and the IG that set it wrong. It must be the case then, Your Honor. I thought I was mistaken. I thought the CBT followed Sotelo. If Sotelo followed CBT, then Sotelo would have modified it. I'm reading from Sotelo, the parties acknowledge the applicability of a matter of CBT where we failed, blah, blah, blah. Well, if that's the case, then I'm not sure how to respond to that, except that he didn't exhaust that issue. He didn't raise it to the board. He didn't say that the immigration judge applied the wrong standard. In fact, he argued that the immigration judge had to apply the standard that she applied. But we do have some exceptions for failure to exhaust. And one of them is if it's a pure question of law and the judge got it wrong. And that is one of the standards, and I'm sure there are exceptions. If it's a matter that the board could have corrected, then he has to raise it before the immigration judge. That's not a procedural issue. That's not questions of law. And I would also say the misapplication of the law, I believe, is an abuse of discretion question. It's not a colorable constitutional claim, as this court said in Sanchez-Cruz. Well, I know that after the Real ID Act, part of the counsel's correct. We can review constitutional questions or questions of law. You would have jurisdiction of exhausted questions of law. We could exercise our discretion under just our general procedures to consider a pure question of law, even though the petitioner didn't raise it. I would disagree, Your Honor. I would directly disagree that if it's. Can you cite any case to the contrary? Well, Barron says that the court doesn't have jurisdiction to consider issues that weren't raised below. This is an issue he could have raised below. He could have said to the board, the immigration judge didn't apply the right standard, and because the immigration judge didn't apply the right standard, you should send it back. He didn't do that at all. He, in fact, argued that the immigration judge had to apply the very standard that she applied. So that's something that the board could have corrected but didn't. Is it true, as your opposing counsel said, that there's just one immigration judge here in this district? I don't know, Your Honor. You don't know? And do you know what it means when she says she stands to review and says that? I'm assuming that she's, you know, that she says that she reviews this decision without benefit of the record. I assume that refers to the fact that she's given her decision right there during the proceedings, so she necessarily wouldn't have a record because the proceedings have just occurred, so the record hasn't been transcribed. That's because immigration judges normally announce their decision. In certain cases, they'll wait and announce it later, but in most cases they'll announce their decision right there in front of the alien, so I assume that that's what that means. And he's denied voluntary departure, so I assume it's been stayed, depending on the detail. If he was denied voluntary departure, his removal has been stayed, I believe. I can't remember if he was granted a stay by this court or not. I'm questioning that. I don't remember whether he was granted a stay by this court or not. But in any event, my time has almost expired, so our point is that he had to exhaust those issues. The board could have addressed them and could have corrected them. He didn't, and therefore the court doesn't have jurisdiction to consider them. His removal is charged, and the court lacks jurisdiction to consider the discretionary question. Thank you. Thank you, counsel. The case of Ancheta v. Gonzalez will be submitted.
judges: Trott Wardlaw W. Fletcher